UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

STEVE MARTINKO,
     an individual,

CONTENDER'S TREE AND LAWN SPECIALISTS, INC.,
     a Michigan Corporation,

MICHAEL LACKOMAR,
     an individual,

WENDY LACKOMAR,
     an individual,

and

JERRY FROST,
     an individual,

       Plaintiffs,

v.

GRETCHEN WHITMER, in her official capacity as
Governor of the State of Michigan,

       Defendant.

_____/

Case:

## **COMPLAINT**

     NOW COME Plaintiffs, by and through their attorneys, Helm Law PC, who hereby bring this action for declaratory and injunction relief, and monetary damages, against GRETCHEN WHITMER, in her official capacity as Governor of the State of Michigan (here after referred to as "Governor Whitmer") and states in support of their complaint as follows:

## **PARTIES**

1.    Plaintiff, STEVE MARTINKO, is an individual and resident of Oakland County in the

State of Michigan.

2.     Plaintiff, CONTENDER'S TREE AND LAWN SPECIALISTS, INC.. is a Michigan corporation operating as a landscaping and disease and pest control company out of Oakland County, with its principal place of business in Oakland County, State of Michigan.

3.     Plaintiff, MICHAEL LACKOMAR is an individual and resident of Oakland County in the State of Michigan.

4.     WENDY LACKOMAR, is an individual and resident of Oakland County in the State of Michigan.

5.     Plaintiff, JERRY FROST is an individual and resident of Roscommon County in the State of Michigan.

6.     Defendant, GRETCHEN WHITMER, named in her official capacity, is the Governor of the State of Michigan is responsible for enforcing the laws of the State of Michigan, and is charged with implementing policy through executive orders, including the Executive Orders which took effect on March 24, 2020 and April 9, 2020.

## JURISDICTION AND VENUE

7.     This Court has jurisdiction to hear this case under 28 U.S.C. §§ 1331, 1343(a)(3)- (4), which confer original jurisdiction on federal district courts to hear suits alleging the violation of rights and privileges under the United States Constitution.

8.     This action is brought by Plaintiffs seek relief under 28 U.S.C. §§ 2201-2202, 42 U.S.C. §§ 1983 and 1988, and the Fifth and Fourteenth Amendments. U.S. CONST. AMEND. V, XIV.

9.     Venue is proper under 28 U.S.C. § 1391(b), because a substantial part of the events giving rise to Plaintiffs' claims occurred in this district.

## INTRODUCTION

10.     Plaintiffs are individuals and businesses from across the State of Michigan and constitute those affected by Governor Whitmer's actions: (i) an affected business ordered to shutdown and individuals whose fundamental rights to associate with friends and family and utilize their privately owned property have been unjustifiably infringed by Governor Whitmer's executive orders  2020-21 and 2020-42 (identified further below).

11.     An individual's choice to maintain human relationships, whether with friends or family and the right to associate with such individuals under the First Amendment must be secured against undue intrusion by the State because safeguarding this kind of individual freedom is central to our constitutional scheme. *Roberts v. United States Jaycees*, 468 U.S. 609 (1984).

12.     "The Fifth Amendments guarantee that private property shall not be taken for a public use without just compensation was designed to bar Government from forcing some people alone to bear public burdens which, in all fairness and justice, should be borne by the public as a whole." *Armstrong v. United States*, 364 U.S. 40, 49 (1960).

## FACTS

13.     The World Health Organization ("WHO") and the Center for Disease Control and Prevention ("CDC") identified the novel coronavirus ("COVID-19") as a "public health emergency of international concern."

14.     Likewise, the U.S. Department of Health and Human Services ("HHS") declared that COVID-19 has created a public health emergency.

15.     On March 10, 2020, Governor Whitmer proclaimed the existence of a state of emergency throughout the State of Michigan, Executive Order 2020-4.

16.     Since March 10, 2020, Governor Whitmer has issued no less than 39 separate executive

orders in response to COVID-19 but the orders at issue in this case are 2020-21 and 2020-42.

17.     Executive Order 2020-21, attached as **Exhibit 1**, took effect on March 24, 2020. Order 2020-21 restricted travel throughout the State of Michigan and orders all business with limited exception to cease operations. Order 2020-21 remained in effect originally until April 13, 2020 but was subsequently revoked and replaced by Order 2020-42.

18.     Executive Order 2020-42, attached as **Exhibit 2**, took effect on April 9, 2020. Order 2020-42 revoked and replaced 2020-21, extends the timeline originally set by 2020-21 and grossly expands its restrictions on businesses' and individuals' fundamental rights.

19.     Governor Whitmer states in her perambulatory language of 2020-42, that she relies upon a number of different sources to justify the executive action she undertook to address the threat of the COVID-19 pandemic.

20.     Specifically, Governor Whitmer asserted her authority to "promulgate reasonable orders, rules, and regulations as he or she considers necessary to protect life and property or to bring the emergency situation within the affected area under control" under MCL 10.31(1).

<u>BUSINESS RESTRICTIONS UNDER 2020-21 and 2020-42</u>

21.     Under 2020-42 Governor Whitmer mandated the shutdown of all business not deemed "critical infrastructure work" as outlines in section 8 and 9.

22.     2020-42 authorize "critical infrastructure workers" to remain operational at their physical locations, so long as those businesses implemented safety precautions outlined in the order.

23.     Any business operating out of compliance with 2020-42 is subject to the possibility of severe fines and penalties.

24.     2020-42 further prevents any property owner from renting or leasing their property for anything other than providing critical infrastructure.

25.     Notably absent from 2020-42 or any other executive orders issued by Governor Whitmer is any provision addressing the inherent financial burden inflicted by the Orders on individuals and businesses throughout Michigan as a direct result of the mandated shutdowns.

26.     Governor Whitmer's restriction on businesses began on March 24, 2020 and were extended on April 13, 2020. 2020-42 will remain in effect until May 1, 2020 and as of the filing of this Complaint, it remains in effect.

27.     Under 2020-42, businesses such as CONTENDER'S TREE AND LAWN SPECIALISTS, INC, who can safely operate while still observing social distancing have been ordered to close.

28.     In 2020-42, CONTENDER'S TREE AND LAWN SPECIALISTS, INC's business was not categorized as an "essential" business that would be permitted to stay open when Governor Whitmer ordered several categories of businesses to close for the stated public purpose of controlling COVID-19 to protect public health.

29.     CONTENDER'S TREE AND LAWN SPECIALISTS, INC's busiest time of year is the spring and summer when various pesticide and disease control chemical applications are essential to control the spread of potentially dangerous tree and plant diseases and invasive insects.

30.     Timing is crucial for the application of these chemicals. Any delay beyond the first weeks of April may prevent the ability to control dangerous tree and plant diseases and invasive insects.

31.     2020-21 and 2020-42 closed CONTENDER'S TREE AND LAWN SPECIALISTS, INC in the midst of its spring chemical application season.

32.     To enable it to perform this chemical application work, CONTENDER'S TREE AND LAWN SPECIALISTS, INC had ordered and received hundreds of thousands of dollars in chemicals and equipment from its suppliers.

33.     With 2020-21 and 2020-42, CONTENDER'S TREE AND LAWN SPECIALISTS, INC

was unable to book additional contracts or undertake the chemical applications that were already scheduled.

34. Under threat of fines and criminal penalties CONTENDER'S TREE AND LAWN SPECIALISTS, INC is substantially denied the use of its Tangible Property and its Physical Locations for the full duration of 2020-21 and 2020-42.

35. By denying CONTENDER'S TREE AND LAWN SPECIALISTS, INC access to its Physical Locations, it is unable to generate any additional sales or other forms of revenue, to collect the bulk of their outstanding receivables or pay many of their payables.

36. As a result, the working capital of CONTENDER'S TREE AND LAWN SPECIALISTS, INC was severely constrained and it was forced to immediately reduce its expenses in order to survive until 2020-21 and 2020-42 are lifted.

37. The same day as the 2020-21 was issued CONTENDER'S TREE AND LAWN SPECIALISTS, INC was forced to lay off fifteen (15) workers, irreparably damaging its sterling reputation with its workforce.

38. With her forced closures, Governor Whitmer caused considerable damage to CONTENDER'S TREE AND LAWN SPECIALISTS, INC., to its reputations, and to its relationships with its customers, vendors and employees.

39. Neither Governor Whitmer nor the State of Michigan have offered appropriate compensation to CONTENDER'S TREE AND LAWN SPECIALISTS, INC. in exchange for the total regulatory seizure of CONTENDER'S TREE AND LAWN SPECIALISTS, INC.'s property.

40. 2020-21 and 2020-42 prevent CONTENDER'S TREE AND LAWN SPECIALISTS, INC. from using its Physical Location or its Tangible Property in any economically beneficial manner.

The Orders require that CONTENDER'S TREE AND LAWN SPECIALISTS, INC. and its Tangible Property sit idle in Physical Locations they are prohibited from accessing.

41.     During the pendency of the 2020-21 and 2020-42 while it has no use of its Tangible Property and their Physical Locations, the value of CONTENDER'S TREE AND LAWN SPECIALISTS, INC. is substantially diminished.

42.     2020-21 and 2020-42 make it commercially impracticable to use the property belonging to CONTENDER'S TREE AND LAWN SPECIALISTS, INC. for any economically beneficial purpose, and inflict very nearly the same effect for constitutional purposes as appropriating or destroying [the property as a whole]. *Tenn. Scrap Recyclers Ass'n v. Bredesen*, 556 F.3d 442, 455, (2009)

43.     The property of CONTENDER'S TREE AND LAWN SPECIALISTS, INC., which Governor Whitmer's Orders render unusable, includes both the real property in which the business is physically located ("Physical Location") and the tangible property housed in such locations – such as machinery, inventory, tools, business records, and other forms of tangible equipment used in operating each business ("Tangible Property") (both forms of property collectively referred to as "Property").

44.     Despite issuing 2020-21 and 2020-42 for a readily-apparent public purpose, Governor Whitmer did not provide compensation for those who suffered substantial – and perhaps total – diminution of value in their property interests as a result. 2020-21 and 2020-42 by their operative provisions deprived CONTENDER'S TREE AND LAWN SPECIALISTS, INC. of all economically beneficial use of its Property.

45.     2020-21 and 2020-42 constitute a regulatory taking implemented for a recognized public purpose, and therefore the failure to pay just compensation contravenes the Takings Clause of the

Fifth and Fourteenth Amendments. *Coalition for Gov't Procurement v. Fed. Prison Indus.*, 365 F.3d 435, 478, (2004) see also  *Horne v. Dep't of Agric.*, 576 U.S. 350, 135 S. Ct. 2419, 2426 (2015) ("Nothing in the text or history of the Takings Clause, or our precedents, suggests that the rule is any different when it comes to appropriation of personal property. The Government has a categorical duty to pay just compensation when it takes your car, just as when it takes your home.").

<u>INDIVIDUAL RESTRICTIONS UNDER 2020-21 and 2020-42</u>

46.     Under 2020-21 individuals are restricted from leaving their residences for any reason not expressly authorized under the orders.

47.     2020-42 expands the restrictions under 2020-21 and includes restriction whereby individuals are permitted to leave one's residence only to purchase groceries, medications, or other necessary goods; to go to work if employed as a "critical infrastructure employee," to seek medical or dental care, to care for minors or adults in need of assistance; to care for pets; to take a walk in the park, to travel to or from another state; and to attend court hearings. All other travel is prohibited.

48.     Order 2020-42 further and specifically outlaws the right of an individual to travel between two residences, travel to vacation rentals, and to gather in any number of people not part of a single household.

49.     Under 2020-42 the individual named Plaintiffs have been prevented from exercising some of their most fundamental rights enjoyed by citizens of the United States and the State of Michigan.

50.     2020-42 imposes severe fines and criminal penalties for any resident of the State of Michigan operating out of compliance with the 2020-42.

51.     2020-42 will remain in effect until May 1, 2020 and as of the filing of this Complaint, it remains in effect.

52.     Plaintiff, STEVE MARTINKO, resides in Oakland County, Michigan and is the owner of CONTENDER'S TREE AND LAWN SPECIALISTS, INC.

53.     Under 2020-42, because MR. MARTINKO is barred from accessing his company's property.

54.     Plaintiffs, MICHAEL LACKOMAR and WENDY LACKOMAR are a married couple who reside in Oakland County, Michigan and own a cabin located in Sanilac County, Michigan.

55.     Both LACKOMARS are employed as critical infrastructure workers.

56.     The LACKOMARS were at their cabin in Sanilac County, when 2020-42 went into effect. Pursuant to 2020-42, the LACKOMARS were not permitted to return to their residence in Oakland County.

57.     Neither Governor Whitmer nor the State of Michigan have offered appropriate compensation to the LACKOMARS or any other resident in exchange for the total regulatory seizure of their privately owned property.

58.     2020-42 requires Mr. MARTINKO and the LACKOMARS' Property to sit idle.

59.     Plaintiff, JERRY FROST resides in Roscommon County, Michigan. Mr. FROST lives alone but has a longtime girlfriend of 14 years who resides nearby. Yet under 2020-42, because Mr. FROST does not reside in the same household as his girlfriend, he cannot visit her or vice versa.

60.     Mr. FROST also has other friends and family in the area however under 2020-42, because Mr. FROST does not reside in the same household with all of his friends and family, he is not permitted to visit them or vice versa.

61.     Under threat of fines and criminal penalties the individual Plaintiffs are prohibited from traveling freely within the State of Michigan, visiting family and friends, attending to or utilizing their privately owned property, and visiting their significant others for the duration of 2020-42.

AUTHORITY

62.     Governor Whitmer claimed her authority to enact the Orders by citing a set of broad emergency statutes which she said authorized her actions to stem the spread of COVID-19 across the State of Michigan. This suit <u>does not</u> seek to contest whether Governor Whitmer's decision to issue the COVID-19 Executive Orders were prudent or within her authority to issue.

63.     This suit accepts as fact that Governor Whitmer took action for a public purpose. As she stated in the preamble to her executive orders, "the World Health Organization and the Centers for Disease Control and Prevention ("CDC") have declared [COVID-19] a 'public health emergency of international concern,' and the U.S. Department of Health and Human Services ("HHS") Secretary has declared that COVID-19 creates a public health emergency."

64.     Governor Whitmer's actions were not designed to serve her private interests, nor did Governor Whitmer identify any private interest served by his actions.

65.     Notwithstanding their legitimate public purpose, Governor Whitmer's Orders halted all economic activity and violates fundamental rights protected by the Constitution of the United States and the Constitution of the State of Michigan.

**COUNT I**

<u>VIOLATION OF THE TAKINGS CLAUSE—42 U.S.C. §1983</u>

<u>2020-21 and 2020-42 are an unconstitutional regulatory taking of property without just compensation in violation of the fifth amendment's takings clause as incorporated under the fourteenth amendment</u>

66.     Plaintiffs hereby incorporate by reference the preceding paragraphs as though fully set

forth herein.

67.     Governor Whitmer has seized without compensation the property of businesses and individuals across the State, by forcing the closures of business and restricting travel to second homes and vacation properties under 2020-21 and 2020-42.

68.     These uncompensated seizures violate the Takings Clause of the Fifth Amendment, made applicable to States through the Fourteenth Amendment, and also violate well-established notions of Substantive and Procedural Due Process. Plaintiffs respectfully request that this Court (i) declare the Governor Whitmer's actions unconstitutional, and (ii) order the payment of just compensation.

69.     Governor Whitmer issued a series of Executive Orders for the public purpose of protecting Michigan's public health, safety and welfare.

70.     Governor Whitmer has placed the cost of these Orders – issued for the benefit of the public – squarely upon the shoulders of private individuals and their families and has failed to justly compensate affected parties for these takings undertaken for their benefit to the public.

71.     Without extending constitutionally required just compensation to Plaintiffs, these Orders jeopardize the sustainability of Plaintiff's businesses and the rights of the Plaintiff's rights with respect to property ownership.

72.     The Takings Clause of the Fifth Amendment provides that private property shall not "be taken for public use, without just compensation." U.S. Const. Amend. V.

73.     The Takings Clause "is designed not to limit the governmental interference with property rights *per se,* but rather to secure *compensation* in the event of otherwise proper interference amounting to a taking." *Lingle v. Chevron U.S.A. Inc.*, 544 U.S. 528, 536–37 (2005) (quoting *First English Evangelical Lutheran Church of Glendale v. County of Los Angeles,* 482 U.S. 304, 315 (1987) (emphasis in original)).

74. The Takings Clause bars government actors "from forcing some people alone to bear public burdens which, in all fairness and justice, should be borne by the public as a whole." *Armstrong v. United States,* 364 U.S. 40, 49 (1960).

75. Governor Whitmer, issued 2020-21 and 2020-42 as a means of slowing the spread of the novel coronavirus.

76. Governor Whitmer acted under color of state law, and 2020-21 and 2020-42 were issued to serve a well-recognized public purpose by a duly elected state official and his designee.

77. 2020-21 and 2020-42 adversely impacted CONTENDER'S TREE AND LAWN SPECIALISTS, INC. and the LACKOMARS' use of their Tangible Property and Physical Locations to such an extent that, at least temporarily, the Orders entirely diminished the economically beneficial use of those Properties.

78. Under 2020-21 and 2020-42 *all* economically beneficial and profitable uses of CONTENDER'S TREE AND LAWN SPECIALISTS, INC. Tangible Property and Physical Location and the benefit of the LACKOMARS owning their Property; save bare ownership, the entire bundle of property rights was extinguished.

79. 2020-21 and 2020-42 requires Physical Locations housing "non-critical infrastructure" businesses, or those used as second homes or vacation homes to remain idle.

80. 2020-42 also prohibits the affected Physical Locations from being leased, subleased, bought, sold or used for other purposes.

81. The Supreme Court "recognized that government regulation of private property may, in some instances, be so onerous that its effect is tantamount to a direct appropriation or ouster— and that such 'regulatory takings' may be compensable under the Fifth Amendment." *Lingle*, 544 U.S. at 537

82.    "The general rule at least is that while property may be regulated to a certain extent, if regulation goes too far it will be recognized as a taking." *Pennsylvania Coal Co. v. Mahon*, 260 U.S. 393, 415–16 (1922).

83.    Governor Whitmer's executive Orders "go too far" and must "be recognized as a taking." *See id*.

84.    Otherwise, without just compensation guaranteed by the Takings Clause, CONTENDER'S TREE AND LAWN SPECIALISTS, INC., and the LACKOMARS will be privately saddled with the cost of paying for government action undertaken for the common good.

85.    CONTENDER'S TREE AND LAWN SPECIALISTS, INC., and the LACKOMARS have suffered a complete loss of "*all* economically beneficial uses" of their Property while 2020-42 remains in effect. This complete loss constitutes a categorical taking, whether it be CONTENDER'S TREE AND LAWN SPECIALISTS, INC. and the LACKOMARS inability to operate their businesses at their Physical Locations or their inability to exercise any of their other property rights with regard to their Tangible Property. *See Lucas v. S.C. Coastal Council*, 505 U.S. 1003, 1019 (1992).

86.    CONTENDER'S TREE AND LAWN SPECIALISTS, INC. and the LACKOMARS have been called upon to sacrifice all usage of their Properties in the name of the common good, that is, to leave their properties economically and otherwise idle, and for this, they have suffered a taking. *Lucas*, 505 U.S. at 1019.

87.    In the alternative, under the framework articulated by the Supreme Court in *Penn Central*, 2020-42 constitutes a taking based upon "the magnitude of [the Orders'] economic impact and the degree to which [the Orders] interfere[] with legitimate property interests." *Lingle*, 544 U.S. 528 at 540.

88.     The Supreme Court's analysis in *Penn Central* sets forth the framework for assessing whether government action is considered a regulatory taking, identifying "several factors that have particular significance." *Penn Central Transp. Co. v. New York City,* 438 U.S. 104, 124 (1978).

89.     The court looks to three factors when analyzing a taking: (1) "[t]he economic impact of the regulation on the claimant," (2) "the extent to which the regulation has interfered with distinct investment-backed expectations," and (3) "the character of the governmental action," *Penn Cent.,* 438 U.S. at 124, 98 S.Ct. 2646. While these factors provide "important guideposts," "[t]he Takings Clause requires careful examination and weighing of all the relevant circumstances." *Palazzolo,* 533 U.S. at 634, 636, 121 S.Ct. 2448 (O'Connor, J., concurring); *see also Tahoe–Sierra,* 535 U.S. at 321, 122 S.Ct. 1465 (whether a taking has occurred "depends upon the particular circumstances of the case"); *Yee v. City of Escondido,* 503 U.S. 519, 523, 112 S.Ct. 1522, 118 L.Ed.2d 153 (1992) (regulatory takings claims "entail[ ] complex factual assessments"). *Lost Tree Vill. Corp. v. United States*, 115 Fed. Cl. 219, 228 (2014) (emphasis added).

90.     Even if the regulation falls short of eliminating all economically beneficial use, a taking nonetheless may have occurred, *Palazzolo v. Rhode Island,* 533 U.S. 606 at 617, (2001).

91.     Since the onset of Governor Whitmer's Orders, CONTENDER'S TREE AND LAWN SPECIALISTS, INC. and the LACKOMARS have not been permitted to use their Physical Locations to operate their businesses, nor have they been allowed to use their Tangible Property for any economically profitable use.

92.     2020-21 and 2020-42 have either entirely drained Plaintiff's Property of all economic value during their pendency, or have nearly done so; in either event, the diminution of value and government interference caused by these Orders is an unconstitutional taking without just

compensation.

### Count II
### SUBSTANTIVE DUE PROCESS—42 U.S.C. §1983

### INTERFERENCE WITH PROPERTY INTERESTS

### 2020-21 and 2020-42 Deprive Plaintiffs of Life, Liberty and/or Property without Due Process of Law in Violation of the Fourteenth Amendment

93.     Plaintiffs hereby incorporate by reference the preceding paragraphs as though fully set forth herein.

94.     Never in the modern history of the United States – even in war time – has such an invasive action striping citizen of fundamental rights been taken by a government order.

95.     The Plaintiffs have a protected liberty interest in their right to live without arbitrary governmental interference in their fundamental property right to use and enjoy land in which they hold a recognized interest. *See MFS, Inc. v. DiLazaro,* 771 F. Supp. 2d 382, 440–41 (E.D. Pa. 2011) (*citing DeBlasio v. Zoning Bd. of Adjustment for Twp. of W. Amwell,* 53 F.3d 592, 600 (3d Cir.1995)); *see also Horne*, 576 U.S. 350, 135 S. Ct. at 2426.

96.     The Supreme Court "ha[s] emphasized time and again that "[t]he touchstone of due process is protection of the individual against arbitrary action of government[.]" *Cty. of Sacramento v. Lewis*, 523 U.S. 833, 845 (1998) (quoting *Wolff v. McDonnell,* 418 U.S. 539, 558 (1974)).

97.     "[T]he fault [may] lie[] in a denial of fundamental procedural fairness … or in the exercise of power without any reasonable justification in the service of a legitimate governmental objective[.]" *Id*. at 845-846 (citations omitted).

98.     "'[S]ubstantive due process' prevents the government from engaging in conduct that

'shocks the conscience,' ... or interferes with rights 'implicit in the concept of ordered liberty[.]'" *United States v. Salerno,* 481 U.S. 739, 746 (1987) (quoting *Rochin v.California,* 342 U.S. 165, 172 (1952), and *Palko v. Connecticut,* 302 U.S. 319, 325–326 (1937)).

99.  "[T]he substantive component of the Due Process Clause is violated by executive action only when it can properly be characterized as arbitrary, or conscience shocking, in a constitutional sense." *Lewis*, 523 U.S. at 847 (quotations omitted).

100.  2020-21 and 2020-42 as set forth above, constitute arbitrary, capricious, irrational and abusive conduct which unlawfully interferes with Plaintiffs' liberty and property interests protected by the due process clause of the Fourteenth Amendment to the United States Constitution.

101.  Defendant has acted under color of state law with the intent to unlawfully deprive the Plaintiffs of their liberty and property without substantive due process in violation of the Fourteenth Amendment to the United States Constitution.

102.  Defendant's actions, including issuance and enforcement of 2020-21 and 2020-42 constitute the official policy, custom, and practices of the State of Michigan.

103.  2020-21 and 2020-42 intrude upon the Plaintiffs' use and enjoyment of their property and separately impacts upon the use of its Tangible Property. *See DeBlasio,* 53 F.3d at 601. Therefore, Governor Whitmer has violated CONTENDER'S TREE AND LAWN SPECIALISTS, INC. and the LACKOMARS substantive due process rights. *See also Nashville, C. & St. L. Ry. v. Walters*, 294 U.S. 405, 415 (1935).

104.  Governor Whitmer has arbitrarily, irrationally and capriciously imposed upon CONTENDER'S TREE AND LAWN SPECIALISTS, INC. and the LACKOMARS use and enjoyment of their property by *inter alia*, requiring both Plaintiffs to shutdown indefinitely and

to privately bear the burden for such publicly beneficial decisions, which are aimed at slowing the spread of the novel coronavirus. *See DeBlasio,* 53 F.3d at 601.

105.    Governor Whitmer implemented 2020-21 and 2020-42 for the purpose of preserving public health, safety and welfare. The implementation of these Orders, however, caused Plaintiffs, harm which they are being asked to privately bear for a manifest public benefit.

106.    The Governor Whitmer's behavior does not comport with traditional ideas of fair play and decency, *Breithaupt v. Abram,* 352 U.S. 432, 435 (1957), and shocks the conscience' and violates the 'decencies of civilized conduct.'" *See Lewis*, 523 U.S. 833, 846–47 (citations omitted); and violates Plaintiffs' Substantive Due Process Rights.

107.    Governor Whitmer has acted intentionally, willfully, wantonly, and with callous and reckless disregard for Plaintiffs' constitutional rights.

108.    As a direct and proximate result of Governor Whitmer's Executive Orders, CONTENDER'S TREE AND LAWN SPECIALISTS, INC. and the LACKOMARS have and will continue to sustain monetary damages including loss in the value of the Tangible Property and Physical Locations, lost revenues, profits, expenses, attorneys' fees, and other costs incurred.

## COUNT III
## SUBSTANTIVE DUE PROCESS—42 U.S.C. §1983

## INTERFERENCE WITH RIGHT TO ASSOCIATE

## 2020-21 and 2020-42 Deprive Plaintiffs of Life, Liberty and/or Property without Due Process of Law in Violation of the Fourteenth Amendment

109.    Plaintiffs hereby incorporate by reference the preceding paragraphs as though fully set forth herein.

110.    The Plaintiffs have a right to be free from intrusion into their familial relationships and the fundamental freedom of their right to associate. *Roberts v. United States Jaycees*, 468 U.S. 609

(1984).

111.    Moreover, the constitutional shelter afforded such relationships reflects the realization that individuals draw much of their emotional enrichment from close ties with others. Protecting these relationships from unwarranted state interference therefore safeguards the ability independently to define one's identity that is central to any concept of liberty. *Id*. at 619.

112.    Family relationships, by their nature, involve deep attachments and commitments to the necessarily few other individuals with whom one shares not only a special community of thoughts, experiences, and beliefs but also distinctively personal aspects of one's life. *Id*. at 619-620.

113.    The Plaintiffs have a protected liberty interest in their right to associate with their friends, family and significant others without arbitrary governmental interference. *Loving* v. *Virginia*, 388 U.S. 1 (1967).

114.    The Supreme Court has emphasized time and again that the touchstone of due process is protection of the individual against arbitrary action of government. *Cty. of Sacramento v. Lewis*, 523 U.S. 833, 845 (1998) (quoting *Wolff v. McDonnell,* 418 U.S. 539, 558 (1974)).

115.    The fault may lie in a denial of fundamental procedural fairness … or in the exercise of power without any reasonable justification in the service of a legitimate governmental objective. *Id*. at 845-846 (citations omitted).

116.    Choices to enter into and maintain certain intimate human relationships must be secured against undue intrusion by the State because of the role of such relationships in safeguarding the individual freedom that is central to our constitutional scheme. In this respect, freedom of association receives protection as a fundamental element of personal liberty. *Roberts v. United States Jaycees*, 468 U.S. 609, 617-618 (1984).

117.    This Court has long recognized that freedom of personal choice in matters of marriage and

family life is one of the liberties protected by the Due Process Clause of the Fourteenth Amendment. *Cleveland Bd. of Educ. v. LaFleur*, 414 U.S. 632, 639-640, (1974) see also *Roe* v. *Wade*, 410 U.S. 113; *Loving* v. *Virginia*, 388 U.S. 1, 12; *Griswold* v. *Connecticut*, 381 U.S. 479; *Pierce* v. *Society of Sisters*, 268 U.S. 510; *Meyer* v. *Nebraska*, 262 U.S. 390.

118.     The test for a substantive-due-process right is twofold: whether the right is "objectively, deeply rooted in this Nation's history and tradition" and whether "the crucial guideposts" of "[o]ur Nation's history, legal traditions, and practices" support the right. The fundamental rights recognized under substantive due process include "personal decisions relating to marriage . . . family relationships, child rearing, and education," which often "involv[e] the most intimate and personal choices a person may make in a lifetime." *Fakoya v. County of Clark*, 2014 U.S. Dist. LEXIS 143240, 13-14, 2014 WL 5020592.

119.     2020-21 and 2020-42 as set forth above, constitute arbitrary, capricious, irrational and abusive conduct which unlawfully interferes with Plaintiffs' liberty and the right to associate with friends and family protected by the due process clause of the Fourteenth Amendment to the United States Constitution.

120.     Defendant has acted under color of state law with the intent to unlawfully deprive the Plaintiffs of their liberty and property without substantive due process in violation of the Fourteenth Amendment to the United States Constitution.

121.     Defendant's actions, including issuance and enforcement of 2020-21 and 2020-42 constitute the official policy, custom, and practices of the State of Michigan. Therefore, Governor Whitmer has violated the Plaintiff's' substantive due process rights.

122.     Governor Whitmer has acted intentionally, willfully, wantonly, and with callous and reckless disregard for Plaintiffs' constitutional rights.

123.    As a direct and proximate result of Governor Whitmer's Executive Orders, the Plaintiffs have and will continue to sustain damages including attorneys' fees, and other costs incurred.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiffs demand judgment in their favor, against Defendant and seek relief for:

a.  Issuing a Temporary Restraining Order enjoining Defendant from enforcing Executive Orders 2020-21 and 2020-42 as a violation of Plaintiffs' fundamental rights under the First, Fifth and Fourteenth Amendments;

b.  A declaratory judgment that issuance and enforcement of Executive Orders 2020-21 and 2020-42 as an unconstitutional violation of Plaintiffs substantive due process rights under the First and Fourteenth Amendment;

c.  Compensatory damages adequate to justly compensate Plaintiffs for the regulatory taking of their Physical Location and Tangible Property;

d.  Compensatory damages adequate to satisfy Plaintiffs in the amount owed for Defendants' violations of the Due Process Clause of the Fourteenth Amendment;

e.  Punitive damages;

f.  A declaratory judgment that issuance and enforcement of Executive Orders 2020-21 and 2020-42 as an unconstitutional taking without just compensation, under the Fifth and Fourteenth Amendment;

g.  A declaratory judgment that issuance and enforcement of Executive Orders 2020-21 and 2020-42 as an unconstitutional violation of Plaintiffs substantive due process rights under the First and Fourteenth Amendment;

h.  A permanent injunction to prohibit Defendants from enforcing the Executive Orders 2020-21 and 2020-42;

i.   An award of costs and expenses, including reasonable attorneys' fees under 42 U.S.C. §

1988; and,

j.   Such other and further relief as this Court deems appropriate.

Respectfully submitted,

Date:  April 13, 2020                                 /s/  *David C. Helm*_____
                                                     HELM LAW
                                                     By: DAVID C. HELM (P-75022)
                                                     Attorney for Plaintiffs
                                                     598 N. Mill St.
                                                     Plymouth, MI 48170
                                                     (248) 679-8804
                                                     (248) 667-7802 fax
                                                     David@HelmLawPC.com

## JURY DEMAND

Plaintiffs demand a jury trial on all counts contained in the Complaint.

Respectfully submitted,

Date:  April 13, 2020                                 /s/  *David C. Helm*_____
                                                     HELM LAW
                                                     By: DAVID C. HELM (P-75022)
                                                     Attorney for Plaintiffs
                                                     598 N. Mill St.
                                                     Plymouth, MI 48170
                                                     (248) 679-8804
                                                     (248) 667-7802 fax
                                                     David@HelmLawPC.com